767 So.2d 927 (2000)
PREMIER RESTAURANTS, INC.
v.
KENNER PLAZA SHOPPING CENTER, L.L.C.
Creative Food Concepts, Inc.
v.
Kenner Plaza Shopping Center, L.L.C.
Nos. 99-CA-1310, 99-CA-1311.
Court of Appeal of Louisiana, Fifth Circuit.
August 29, 2000.
*928 Stephen I. Dwyer, Susanne Cambre, Gregory J. Charles, Dwyer & Cambre, Metairie, Louisiana, Counsel for Kenner Plaza Shopping Center, L.L.C., Defendant-Appellant.
Robert A. Kutcher, Nicole S. Tygier, Patricia D. Tunmer, Chopin, Wagar, Cole, Richard, Reboul & Kutcher, L.L.P., Metairie, Louisiana, Counsel for Premier Restaurants, Inc., Plaintiff-Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
This appeal arises from two consolidated suits by Premier Restaurants, Inc. and Creative Food Concepts, Inc. concerning commercial lease agreements with Kenner Plaza Shopping Center, L.L.C. The rulings on appeal concern only the first suit, filed by Premier Restaurants.[1]
At issue are two partial summary judgments: The first, dated January 13, 1999, granted a partial summary judgment on liability in favor of plaintiff against defendant, finding that defendant directly breached the July 15, 1997 lease. The second, dated August 12, 1999, granted a partial summary judgment on specific performance in favor of Premier Restaurants against Kenner Plaza. Kenner Plaza appealed both judgments.
We reverse both of the summary judgments.
The gist of Kenner Plaza's argument is that the partial summary judgments on liability and specific performance should be reversed because they were not properly supported, issues of fact precluded summary judgment, and the district court should have granted appellant's motion for a new trial.
Kenner Plaza is the owner of the property and improvements located on Williams Boulevard in Kenner between West Esplanade Avenue and 33rd Street, bearing the municipal address 3300-3400 Williams Boulevard (hereafter "the Shopping Center"). Tenants of the Shopping Center include Burlington Coat Factory, Auto Zone, Mustang's White Horse Saloon, Church's Fried Chicken, Rite Aid and Old America.
On January 22, 1998 Premier Restaurants filed a petition for declaratory judgment, specific performance and damages, claiming that on July 15, 1997 it entered into a lease agreement with Kenner Plaza in conjunction with the development of a Copeland's of New Orleans restaurant. Plaintiff alleged the lease encompassed a *929 term of ten full calendar years, with a renewal option at the term of the lease for an additional five years with three successive five-year options. Premier further alleged that Kenner Plaza warranted it is the sole owner in "fee simple absolute" of the leased premises, that it had the right to grant any easements referred to in the lease, and that it had the full right and power to execute the lease, to lease the premises, and to deliver the easements referred to in the lease. In addition, Kenner Plaza guaranteed Premier peaceable possession and quiet enjoyment of the leased premises and warranted that it, as lessor, had the full power to carry out the transactions contemplated by the lease, and that there were no documents of record superior to the lease other than those attached to the lease as Exhibit B. Premier asserted, however, that no exhibit B was attached to the lease.
Premier further alleged that, although the lease specifically included restrictions on the lessor's ability to lease portions of the lessor's larger tract for use as a restaurant selling items similar to those sold by Copeland's, the lease contained no contingencies or rights of approval which needed to be obtained by the lessor prior to leasing to or construction of the Copeland's restaurant.
Premier alleged that shortly after the lease was executed, defendant was faced with objection from other tenants and asked Premier to "swap" its location with that reserved for a Wrap & Roll Cafe being developed by Creative Foods, Inc. (plaintiff in the consolidated case). Premier stated that as an accommodation to Kenner Plaza it agreed to exchange locations as requested.
Premier further alleged that in October 1997, while addressing issues related to parking and access to the out-parcels of the location, Kenner Plaza informed Premier that it could not begin construction due to objections from defendant's other tenants. Since then, defendant has refused to allow plaintiff to begin construction, in contravention of the lease documents.
Premier sought a declaratory judgment that the conduct of Kenner Plaza in preventing Premier from commencing construction constitutes a default of the lease and that the lease contains no provisions which would cause the plaintiff's construction or use of the leased premises to be contingent upon or subject to approval of any other tenants of the shopping center.
In addition, plaintiff sought specific performance of defendant's obligations under the lease, including use of the leased premises for the construction and operation of a Copeland's of New Orleans restaurant.
Finally, plaintiff sought damages to recover costs expended in preparation for the construction of its restaurant, for losses associated with delay of the opening of the restaurant, for any sums expended by it in curing the default or breach, plus interest, attorney's fees and costs incurred arising out of an action on the lease. Plaintiff alleged it is further entitled to recover damages representing the difference in site value and rental, as well as costs associated with conforming architectural plans to a new site and the loss in revenues due to delay in performance and construction, and all other consequential damages arising out of the conduct of Kenner Plaza.
Defendant responded with an exception of no cause of action, which was denied. Thereafter defendant filed an answer in which it denied that it entered into a lease as alleged by plaintiff and denied the remainder of the allegations in the petition. The answer asserted the following defenses: that the alleged lease agreement is of no force or effect because it was not authorized or entered into by the duly authorized manager of Kenner Plaza Shopping Center, L.L.C.; that the lease was contingent upon the lessee obtaining all necessary permits and, since no permit for construction of the restaurant was ever obtained, the lease has no effect or, alternatively, *930 the lessor is not in default; that none of the require permits have been or will be obtained because addition of the proposed restaurant would cause the Shopping Center to exceed the parking requirements imposed by city law, so that either the lease agreement is of no effect or the lessee is in default of the lease agreement.
Further, defendant asserted that in order to obtain a variance to develop and operate the project, defendant would have to reconfigure the entire parking lot of the Shopping Center, construct and build many new parking spaces, and make certain covenants and agreements with the City of Kenner, which defendant asserted it has no obligation to undertake under the terms of the lease agreement.
In addition, defendant alleged that plaintiff was aware that the lease was subject to approval by the tenants of the Shopping Center, which defendant stated is evidenced by the original lease proposal and was acknowledged in correspondence as well as in meetings by the parties involved in negotiating the transaction subsequent to execution of the lease agreement.
Finally, defendant specifically pleaded the general affirmative defenses of assumption of risk and contributory negligence, error, mistake, estoppel and extinguishment of the lease obligation, and "illegality to the extent that the Lease Agreement does not provide for adequate parking and compliance with the City of Kenner Zoning Ordinance."
Following defendant's answer plaintiff filed a motion for partial summary judgment on liability. Plaintiff argued it was entitled to summary judgment on the issue of liability because the lease contains no requirements for tenant approval and contains an affirmative covenant by Kenner Plaza that there are sufficient parking spaces on the leased premises and the larger tract as defined in Article 19A of the Lease to meet all requirements of any laws, ordinances or regulations.
In support of the motion for partial summary judgment plaintiff filed a copy of the lease agreement and a memorandum in which plaintiff re-asserted its claim that defendant would not allow it to begin construction of the restaurant. Plaintiff referred to correspondence attached to the original petition from the legal department of Copeland's of New Orleans to Kenner Plaza Shopping Center, L.L.C. and Kailas Management, L.L.C. requesting a telephone call to discuss a course of action regarding the lease.
In opposition to the motion defendant filed a memorandum in which it asserted that several disputed issues of material fact remained regarding validity and breach of the purported lease. Attached to the memorandum was a copy of a land lease proposal from Denise Gaines, defendant's property manager, to John Kushner, plaintiff's real estate agent, written during negotiations prior to execution of the lease agreement. The letter stated that the proposal was predicated upon approval from a designated tenant of the Shopping Center, the city planning commission and the city council. In addition, defendant attached an affidavit from Gaines, in which she stated that a lease agreement was entered into with Al Copeland Jr.[2] on behalf of plaintiff; that at all times during the discussions regarding the lease proposal and negotiations, Copeland Jr. acknowledged and agreed that there were contingencies that had to be resolved before the lease could be effective, including obtaining approval of existing tenants, purchase and buyout of existing lease for a fried chicken restaurant, exact location of area to be leased, and an acceptable parking arrangement that would meet parish and city requirements. Gaines' affidavit further stated that "these issues were discussed with Mr. Copeland and that no lease would exist unless and until the above-referenced issues were adequately *931 resolved to the satisfaction of" defendant.
On January 13, 1999, the trial court rendered judgment granting partial summary on liability in favor of plaintiff, including the following finding:
For the reasons assigned in plaintiffs' memorandum, this Court finds that the refusal of defendant, Kenner Plaza, to allow plaintiff to begin construction pursuant to the lease constitutes a direct breach of the July 15, 1997 lease.
Due to the fact that Kenner Plaza in the lease covenants that it has sufficient parking to comply with the requirements of any laws, the fact that plaintiffs have not obtained parking permits is not at issue. Additionally, the clear and unambiguous language of the lease contains no provisions which would require approval of any other tenant of the shopping center before construction or use of the leased premises could begin.
Following the filing of defendant's motion for new trial, the defendant filed additional affidavits in opposition to the motion for partial summary judgment, from Gowri S. Kailas and Chandra Mohan Kailas, the managing members of Kenner Plaza Shopping Center, L.L.C., and Denise Gaines, the property manager.
While the prior appeal of the liability judgment was pending, plaintiff had filed a motion for partial summary judgment on specific performance. Plaintiff argued that because the court had already found judgment in its favor on liability under the lease, it was entitled to specific performance as a matter of law. As supporting documents plaintiff attached a copy of the lease, a copy of the summary judgment on liability, and a statement of uncontested facts that averred that defendant had breached the lease with plaintiff and that plaintiff is entitled to specific performance of the terms of the lease.
In opposition defendant filed a memorandum asserting that the documents plaintiff produced in support of the motion were insufficient to carry plaintiff's burden of resolving all issues of material fact. First, defendant argued, the lease never began because the suspensive conditions were never satisfied. Next, defendant asserted there is a significant issue of material fact left open by the missing Exhibit B to the lease. (Exhibit B was mentioned in the lease as being documents of record superior to the lease.) Third, defendant contended it has never been put in default of the lease as provided in Sections 17 and 42 thereof. Fourth, defendant asserted that plaintiff failed to establish the necessary corporate authority for Kenner Plaza to enter into the lease.
On August 12, 1999 the trial court granted plaintiff's motion for partial summary judgment on specific performance, "[f]or the reasons assigned in plaintiff's memorandum and oral argument, and also due to defendant's failure in demonstrating the existence of a genuine issue of material fact as to why plaintiff is not entitled to specific performance, the preferred remedy for breach of contract under Louisiana law." The judgment also contained a designation of final judgment pursuant to La. C.C.P. art. 1915.
Motions for new trial on both partial summary judgments were heard on August 27, 1999 and denied by judgment of September 15, 1999, culminating in this appeal.[3]
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration *932 of whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991).
La. C.C.P. art. 966 provides that the summary judgment procedure is favored and shall be construed to accomplish the just, speedy, and inexpensive determination of every action, except those disallowed. La. C.C.P. art. 966(A)(2). On a motion for summary judgment, unlike an exception of no cause of action, the allegations of the petition are not automatically considered as true; rather, La. C.C.P. arts. 966-67 set forth the applicable tests. Owens v. Martin, 449 So.2d 448, 452 n. 1 (La.1984).
In Davis v. Specialty Diving, Inc., 98-0458 (La.App. 1 Cir. 4/1/99), 740 So.2d 666, 669, writ denied 99-1852 (La.10/8/99), 750 So.2d 972, the First Circuit expressed concisely what we must review in summary judgment appeals:
Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized.... The initial burden remains with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. LSA-C.C.P. arts. 966 and 967....
* * *
Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. [Footnote and citations omitted.]
La. C.C.P. Art. 967 outlines the nonmoving party's burden of production as follows:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The initial determination, on a motion for summary judgment, is whether the supporting documents presented by the moving party are sufficient to resolve all material issues of fact, if they are not sufficient, summary judgment should be denied. Babin v. First Energy Corp., 96 1232 (La.App. 1 Cir. 3/27/97), 693 So.2d 813, 817-818, citing Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 752. "To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact." Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152, 1154 (La.1983).
A document which is not an affidavit or sworn to in any way, or which is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether or *933 not there remain genuine issues of material fact. Herod v. American Service Life Ins. Co., 554 So.2d 783 (La.App. 5 Cir. 1989). An unsworn and unverified document is insufficient. Parker v. Sears, Roebuck & Co., 418 So.2d 1361, 1364 (La.App. 2 Cir.1982); Continental Casualty Co. v. McClure, 313 So.2d 260, 262 (La.App. 4th Cir.1975). Thus, statements made in letters rather than by affidavits have no evidentiary value. See Powers v. Tucker, 29,190 (La.App. 2 Cir. 2/26/97), 690 So.2d 922, 926.
Here, the motion for summary judgment on liability was supported by the attachment of an uncertified copy of the lease and unsworn, uncertified copies of letters from attorneys. Those letters do not on their face establish that the attorneys were either representing Premier Restaurants or directing the letters to Kenner Plaza. Even considering that Kenner Plaza does not dispute that the copy of the lease attached to the motions is correct, in our view the attachments are insufficient to establish plaintiff's burden of proving not only that there was a valid lease but also that the lease was breached. Without the appropriate supporting documentation, the mover cannot be said to be entitled to summary judgment.
Further, any inadequacy of defendant's opposition is moot because the mover, plaintiff, failed to carry its initial burden of showing it could establish these matters.
Unless the motion has been made and supported by affidavits, together with sworn or certified copies of all papers or documents referred to, or depositions or answers to interrogatories, La. C.C.P. art. 967 does not shift the burden to the adverse party to set forth specific facts showing that there is a genuine issue for trial.
Murphy v. L & L Marine Transp., Inc., 97-33 (La.App. 5 Cir. 5/28/97), 695 So.2d 1045, 1048. Therefore, the opponents of the motion for summary judgment need not present any opposition evidence in order to defeat the motion. Kennington v. H. Blume Johnson, Inc., 94-0744 (La.7/1/94), 638 So.2d 1066, 1067.
Accordingly, we find the trial court erred in granting the motion for partial summary judgment on the issue of liability. Because the judgment on liability must be reversed, the partial summary judgment on the issue of specific performance also must fall.
For the foregoing reasons, the judgments on appeal are reversed and the matter is remanded for further proceedings. Costs of this appeal are assessed against the appellee, Premier Restaurants, Inc.
JUDGMENTS REVERSED AND REMANDED.
NOTES
[1] Appellant states in its brief that Creative Food Concepts, Inc., plaintiff in the second suit, filed an ex parte motion to dismiss its petition in case number 519-542 (appeal number 99-CA-1311) on October 2, 1999. Although we find no motion or order dismissing that suit in the record before us, Creative Foods took no appeal and made no appearance before us in this matter. Therefore, we need make no further mention of the second case.
[2] Al Copeland Jr. signed the lease agreement as President of Premier Restaurants, Inc.
[3] In its brief plaintiff-appellee advises that on March 9, 2000, during pendency of this appeal, the trial court rendered judgment on plaintiff's claim for damages. Plaintiff states the court found defendant liable for $1,250,000.00 in damages through December 31, 1999, plus $55,618.75 in attorney's fees, plus $40,705.00 per month for each month thereafter in which Kenner Plaza delays in performing pursuant to the lease. The record before us was lodged on December 1, 1999 and, obviously, contains no documentation of these subsequent developments.